# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE COW CREEK BAND OF<br>UMPQUA TRIBE OF INDIANS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 1:24-cv-03594** |
| | ) | |
| U.S. DEPARTMENT OF THE<br>INTERIOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
## TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARDS ...................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

    I.    Plaintiffs are unlikely to succeed on the merits of their claims .............................. 7

        A.    Plaintiffs have not challenged any final agency action.............................. 7

        B.    Plaintiffs lack constitutional and prudential standing .............................. 11

            1.    Plaintiffs lack Article III standing................................................. 12

            2.    Plaintiffs allege purely economic harms that fall outside NEPA's zone of interest...................................................... 14

        C.    Plaintiffs are not likely to succeed on the merits of their substantive NEPA claims................................................................... 15

            1.    Plaintiffs' claims concerning *Marin Audubon* lack merit............ 15

            2.    Plaintiffs are unlikely to succeed on their failure to consult claims ................................................................................. 188

    II.    Plaintiffs fail to identify any irreparable harm that would occur in the absence of emergency relief.................................................................... 20

    III.    Neither the balance of equities nor the public interest weigh in Plaintiffs' favor ....................................................................................................... 23

CONCLUSION.................................................................................................................. 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abbott Laboratories v. Gardner*,
    387 U.S. 136 (1967).........................................................................................................18

*Am. Anti-Vivisection Soc'y v. USDA*,
    946 F.3d 615 (D.C. Cir. 2020)..........................................................................................8

*Am. Clinical Laboratory Ass'n v. Azar*,
    931 F.3d 1195 (D.C. Cir. 2019).......................................................................................17

*ANR Pipeline Co. v. FERC*,
    205 F.3d 403 (D.C. Cir. 2000)........................................................................................14

*Bennett v. Spear*,
    520 U.S. 154 (1997)...............................................................................................8, 9, 11

*Booth v. Bowser*,
    597 F. Supp. 3d 1 (D.D.C. 2022)....................................................................................23

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Salazar*,
    No. 12-cv-3021, 2013 WL 417813 (E.D. Cal. Jan. 30, 2013)........................................22

*Center for Biological Diversity v. Bernhardt*,
    442 F. Supp. 3d 97 (D.D.C. 2020)............................................................................13, 14

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006)...................................................................................20, 21

*Citizens for a Better Way v. U.S. Dep't of the Interior*,
    No. 2:12-CV-3021-TLN-AC, 2015 WL 5648925 (E.D. Cal. Sept. 24, 2015) ........................19

*CityFed Fin. Corp. v. Office of Thrift Supervision,*
    58 F.3d 738 (D.C. Cir.1995).........................................................................................6, 7

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013).........................................................................................11, 12, 13

*Clark v. City of Lakewood*,
    259 F.3d 996 (9th Cir. 2001) .........................................................................................12

*Dep't of Transp. v. Pub. Citizen*,
    541 U.S. 752 (2004)........................................................................................................4

*Dodd v. Fleming*,
    223 F. Supp. 2d 15 (D.D.C. 2002)...................................................................................7

*Eastern Band of Cherokee Indians v. Dep't of Interior*,
    2020 WL 2079443 (D.D.C. Apr. 30, 2020)....................................................................21

*Eastern Band of Cherokee Indians v. U.S. Dep't of the Interior*,
534 F. Supp. 3d 86 (D.D.C. 2021) ......................................................... 13

*Ely v. U.S. Parole Comm'n*,
1987 WL 11425 (D.D.C. May 20, 1987) ................................................. 15

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir.1996) ............................................................. 7, 11

*Friends of Animals v. U.S. Bureau of Land Mgmt.*,
232 F. Supp. 3d 53 (D.D.C. 2017) .................................................... 13, 21

*Gordon v. Holder*,
632 F.3d 722 (D.C. Cir. 2011) ............................................................... 6

*Government of Province of Manitoba v. Zinke*,
849 F.3d 1111 (D.C. Cir. 2017) .............................................................. 9

*Gros Ventre Tribe v. United States*,
344 F. Supp. 2d 1221 (D. Mont. 2004) ................................................. 10

*Gunpowder Riverkeeper v. FERC*,
807 F.3d 267 (D.C. Cir. 2015) .............................................................. 14

*Indep. Cosmetic Mfrs. & Distribs., Inc. v. U.S. Dep't of Health, Educ. & Welfare*,
574 F.2d 553 (D.C. Cir. 1978) .............................................................. 17

*Karst Envtl. Educ. & Prot. v. EPA*,
475 F.3d 1291 (D.C. Cir. 2007) .............................................................. 7

*Lofton v. Dist. of Columbia*,
7 F. Supp. 3d 117 (D.D.C. 2013) ........................................................... 6

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......................................................................... 12

*Marin Audubon Society v. Federal Aviation Administration*,
121 F.4th 902 (D.C. Cir. 2024) ......................................................... 1, 16

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) .......................................................................... 22

*Mdewakanton Sioux Indians of Minn. v. Zinke*,
255 F. Supp. 3d 48 (D.D.C. 2017) ........................................................ 20

*Mylan Lab'ys Ltd. v. FDA*,
910 F. Supp. 2d 299 (D.D.C. 2012) .................................................. 21, 22

*Nken v. Holder*,
556 U.S. 418 (2009) .......................................................................... 23

*Novartis Pharmaceuticals Corp. v. Becerra*,
No. 24-CV-02234 (DLF), 2024 WL 3823270 (D.D.C. Aug. 13, 2024) ............ 20, 21

iii

*Padgett v. Vilsack*,
    No. CV 24-2425 (LLA), 2024 WL 4006050 (D.D.C. Aug. 30, 2024) .................................... 23

*Papago Tribal Utility Auth. v. Fed. Energy Regul.Comm'n*,
    628 F.2d 235 (D.C. Cir. 1980) ...................................................................................................... 18

*Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*,
    356 F.3d 444 (2d Cir. 2004) ........................................................................................................ 10

*Pub. Citizen v. U.S. Trade Representative*,
    5 F.3d 549 (D.C. Cir. 1993) ........................................................................................................... 7

*Pub. Citizen v. U.S. Trade Representative*,
    970 F.2d 916 (D.C. Cir. 1992) ....................................................................................................... 8

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44 (1996) .......................................................................................................................... 3

*Shawnee Tribe v. Mnuchin*,
    984 F.3d 94 (D.C. Cir. 2021) ...................................................................................................... 23

*Sherley v. Sebelius*,
    644 F.3d 388 (D.C. Cir. 2011) ....................................................................................................... 6

*Sierra Club v. U.S. Dep't. of Energy*,
    825 F. Supp. 2d 142 (D.D.C. 2011) ......................................................................................... 8, 9

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26 (1976) .................................................................................................................. 12, 14

*St. Croix Chippewa Indians of Wis. v. Kempthorne*,
    535 F. Supp. 2d 33 (D.D.C. 2008) ........................................................................................... 9, 10

*Stand Up for California! v. U.S. Dep't of the Int.*,
    919 F. Supp. 2d 51 (D.D.C. 2013) ........................................................................................... 19, 22

*Stand Up for California! v. U.S. Dep't of the Int.*,
    994 F.3d 616 (D.C. Cir. 2021) ....................................................................................................... 9

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
    255 F. Supp. 3d 101 (D.D.C. 2017) ........................................................................................... 20

*States Legal Found. v. Glickman*,
    92 F.3d 1228 (D.C. Cir. 1996) ............................................................................................... 11, 14

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ..................................................................................................................... 13

*Texas v. United States*,
    523 U.S. 296 (1998) ........................................................................................................................ 9

*Town of Verona v. Jewell*,
    No. 08-cv-0647, 2014 WL 12894093 (N.D.N.Y. Aug. 12, 2014) ........................................... 22

*TransUnion, LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ................................................................................ 17

*United States v. Germano-Tanka*,
   2024 WL 3316312 (D. Haw. July 5, 2024) .......................................... 15

*Viasat, Inc. v. FCC*,
   47 F.4th 769 (D.C. Circ. 2022) ...................................... 11, 14, 15

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990)..................................................................... 12

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7, (2008)........................................................................ 6

*Wisconsin Gas Co. v. FERC*,
   758 F.2d 669 (D.C. Cir. 1985).................................................... 21

*Zukerberg v. D.C. Bd. of Elections & Ethics*,
   999 F. Supp. 2d 79 (D.D.C. 2013) ............................................. 18

**Statutes**

Indian Gaming Regulatory Act, 25 U.S.C. § 2702 .............................. 3

Indian Reorganization Act, 25 U.S.C. § 5108 ..................................... 2

National Environmental Policy Act, 42 U.S.C. § 4321 et seq. ....................... 4, 14, 16, 17

Administrative Procedure Act, 5 U.S.C. §§ 701-706 .......................... 2, 7, 8

**Regulations**

25 C.F.R. § 151 .................................................................................... 2

25 C.F.R. § 292.7 ................................................................................ 3

**Other Authorities**

43 Fed. Reg. 55,978 (Nov. 29, 1978).................................................. 4

80 Fed. Reg. 2120 (Jan. 15, 2015) ..................................................... 5

89 Fed. Reg. 35,442 (May 1, 2024) .................................................... 4

89 Fed. Reg. 92,712 (Nov. 22, 2024)........................................ 5, 6, 8, 9, 10

Exec. Order No. 11,991, 42 Fed. Reg. 26,967 (May 25, 1977).......................... 4

## INTRODUCTION

The Coquille Indian Tribe ("Coquille") has proposed that the U.S. Department of the Interior ("Interior") take land Coquille owns into trust so that Coquille can develop a casino. Plaintiffs—the Cow Creek Band of Umpqua Tribe of Indians, the Karuk Tribe, and the Tolowa Dee-ni' Nation—do not want Coquille to build a casino because they fear it will compete for revenue with their own casinos in surrounding areas. Plaintiffs therefore seek to prevent Interior from making any decision on the Coquille's proposed land-to-trust project. But Plaintiffs' claims are premature, because they are based entirely on alleged consequences of a decision that Interior has not yet made. Until Interior takes a final agency action, in the form of a final record of decision on Coquille's proposed action, Plaintiffs cannot state a claim under the Administrative Procedure Act ("APA"). Plaintiffs lack standing for similar reasons, because their allegations of injury hinge on their speculation as to how Interior will exercise its discretion to decide Coquille's land-to-trust proposal. They therefore cannot succeed on the merits of their claim at this juncture. Once Interior issues its decision (and assuming all other jurisdictional requirements are met), Plaintiffs can bring suit to challenge that decision. This Court should deny Plaintiffs' Motion on that basis alone. To do otherwise would violate bedrock principles of judicial review under the APA.

Plaintiffs' Motion fails for multiple other independent reasons as well. They are unlikely to succeed on their claims because (i) the purely economic injuries they allege fall outside the zone of interests protected by the National Environmental Policy Act ("NEPA"); (ii) their NEPA claim relying on a recent decision by a panel of the D.C. Circuit in *Marin Audubon Society v. Federal Aviation Administration*, 121 F.4th 902 (D.C. Cir. 2024) lacks merit, and (iii) they have not established that Interior failed to meaningfully consult with them about Coquille's proposal. They also cannot show that they will suffer irreparable harm that would justify a temporary

1

restraining order or a preliminary injunction because their alleged harms are premature and speculative, as Interior has not yet made a final decision. Nor would the harm be irreparable. Supreme Court precedent confirms that, assuming other pleading requirements are met, a plaintiff can challenge a decision to take land into trust after such a decision is made and the land is taken into trust. Finally, Plaintiffs do not show that the balance of equities or public interest weigh in their favor. The Court should deny Plaintiffs' Motion.

## BACKGROUND

A. Legal Background

   1.    *Indian Reorganization Act*

Section 5 of the Indian Reorganization Act ("IRA") authorizes the Secretary of the Interior, "in [her] discretion," to take lands into trust "for the purpose of providing land for Indians." 25 U.S.C. § 5108. Interior's regulations implementing Section 5 are found at 25 C.F.R. Part 151. The regulations set forth the policies and procedures governing the Secretary's decision-making on tribal applications to have land transferred into trust.

The Assistant Secretary-Indian Affairs ("Assistant Secretary") holds delegated authority to review and discretionarily approve applications for off-reservation trust acquisitions for gaming. The Office of the Assistant Secretary must make its decision whether to approve an application in writing and provide the reasons for the decision. *Id.* § 151.13(b). If the Assistant Secretary decides to approve the application, Interior must file a notice in the Federal Register and "[i]mmediately acquire the land in trust status" once any other applicable legal requirements are met. *Id.* § 151.13(c); *see also id.* § 151.16. "A decision made by the Office of the Secretary or the Assistant Secretary . . . pursuant to delegated authority, is a final agency action under 5 U.S.C. 704 upon issuance." *Id.* § 151.13(c).

2

2.      *Indian Gaming Regulatory Act*

The Indian Gaming Regulatory Act ("IGRA") was enacted in 1988 "to provide a statutory basis for the operation of gaming by Indian tribes as a means of promoting tribal economic development, self-sufficiency, and strong tribal governments[.]" 25 U.S.C. § 2702(1). IGRA permits federally recognized tribes to conduct gaming (subject to rules dependent on the type of gaming) on "Indian lands" within the tribe's jurisdiction. *Id.* §§ 2703(5), 2710(b)(1), (d)(3).[1] "Indian lands" is defined as land within the limits of an Indian reservation and "any lands title to which is either held in trust by the United States for the benefit of any Indian tribe or individual or held by any Indian tribe or individual subject to restriction by the United States against alienation and over which an Indian tribe exercises governmental power." *Id.* § 2703(4).

Generally, IGRA bars gaming on lands taken into trust after October 17, 1988. *Id.* § 2719(a). However, there are limited exceptions to this rule. As relevant to Coquille's application, IGRA's time bar does not apply to lands taken into trust as part of "the restoration of lands for an Indian tribe that is restored to Federal recognition." *Id.* § 2719(b)(1)(B)(iii); Galanda Decl. Ex. 2, Final Environmental Impact Statement, Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project ("FEIS") Vol. II, 2-9 (ECF No. 2-2 at 73).[2] Interior has promulgated regulations detailing the requirements for meeting the restored lands exception. 25 C.F.R. §§ 292.7-.12.

---

[1] Some portions of Section 2710 not relevant here have been held unconstitutional. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996).

[2] The FEIS is attached as Exhibits 1 and 2 to the Galanda Declaration, ECF No. 2-2. It is also available online. Volume 1 is available at https://coquille-eis.com/wp-content/uploads/2024/11/1_Coquille-FTT-and-Gaming-Facility-Final-EIS-Vol-I-Nov-2024-508C.pdf, and Volume II is available at https://coquille-eis.com/wp-content/uploads/ 2024/11/3_Coquille-FTT-and-Gaming-Facility-Final-EIS-Vol-II-Nov-2024-508C.pdf. (last visited Dec. 31, 2024).

3.    *The National Environmental Policy Act and CEQ's regulations*

NEPA was the first major environmental law enacted in the United States. *See* Pub. L. No. 91-190, 83 Stat. 852 (Jan. 1, 1970). NEPA requires preparation of an environmental impact statement ("EIS") for "major [f]ederal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). NEPA mandates procedures—not results. *Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 756 (2004).

NEPA also established CEQ. 42 U.S.C. § 4342. It authorized CEQ to "appraise the various programs and activities of the Federal Government . . . for the purpose of determining the extent to which such programs and activities are contributing to the achievement of [NEPA's goals]" and to "develop and recommend to the President national policies to foster and promote the improvement of environmental quality to meet the conservation, social, economic, health, and other requirements and goals of the Nation[.]" *Id.* §§ 4344(3), (4).

In a 1977 Executive Order, President Carter directed CEQ to promulgate regulations implementing NEPA and directed all agencies to comply with those regulations. Exec. Order No. 11,991, 42 Fed. Reg. 26,967. No President has altered the 1977 Executive Order's requirements that CEQ promulgate regulations and that all agencies comply with them.

CEQ promulgated its initial regulations in 1978. National Environmental Policy Act – Regulations, 43 Fed. Reg. 55,978 (Nov. 29, 1978). CEQ's regulations have been amended over the years and are now codified at 40 C.F.R. parts 1500-1508. *See* National Environmental Policy Act Implementing Regulations Revisions Phase 2, 89 Fed. Reg. 35,442 & 35,446-48 (May 1, 2024) (summarizing amendments).

B.  Factual Background

The Coquille Indian Tribe is a federally recognized sovereign Indian tribe. As of 2019, it had a total enrollment of 1,100 members, approximately 52% of whom live in the Tribe's

Congressionally-designated service area covering 15,603 square miles across five counties in southwestern Oregon. FEIS Vol. II at 1-1, 1-2, ECF No. 2-2 at 122-23.

On January 15, 2015, the Bureau of Indian Affairs ("BIA") issued a Notice of Intent to prepare an EIS in connection with Coquille's application requesting that approximately 2.4 acres of Coquille's land in Medford, Oregon be transferred from fee to trust status.[3] If granted, Coquille intends to renovate an existing bowling alley and convert the building into a gaming facility. *Id.* Coquille's goal for the proposed project "is to improve the economic status of the Tribe so it can better provide housing, health care, education, cultural programs, and other services to its members." *Id.*

On September 3, 2020, BIA published a Notice of Cancellation of the EIS in the Federal Register. FEIS Vol. II 1-3, ECF No. 2-2 at 124. That Notice of Cancellation was subsequently withdrawn on December 21, 2021. *Id.* at 1-3, 1-4, ECF No. 2-2 at 124-25. Interior released a Draft EIS for public comment on November 25, 2022.[4] Interior accepted comments on the Draft EIS for 90 days, ending in February 2023, and held two public hearings in December and January to discuss the proposed project, explain the analysis in the Draft EIS, and hear any oral comments from the public. FEIS Vol. II 1-4, ECF No. 2-2 at 125. Interior later released the Final EIS on November 22, 2024, and continued to accept comments on the FEIS for 30 days, which

---

[3] FEIS, Volume II, 1-1, ECF No. 2-2 at 122; *see also* Dep't of Interior, Bureau of Indian Affairs, "Notice of Intent to Prepare an Environmental Impact Statement for the Proposed Coquille Indian Tribe Fee-to-Trust and Casino Project, City of Medford, Jackson County, Oregon, 80 Fed. Reg. 2120 (Jan. 15, 2015), *available at* https://coquille-eis.com/wp-content/uploads/2022/03/Coquille-NOI-Scoping-508.pdf. (last visited Dec. 31, 2024).

[4] FEIS Vol. II 1-4, ECF No. 2-2 at 125; Dep't of the Interior, Bureau of Indian Affairs, "Draft Environmental Impact Statement for the Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, City of Medford, Jackson County, Oregon, *available at* https://coquille-eis.com/wp-content/uploads/2022/11/NOA-Coquille-DEIS.pdf. (last visited Dec. 31, 2024).

ended on December 23, 2024.[5] *Id.* The FEIS did not end Interior's decision-making process.

Interior is still deliberating on whether to approve the Tribe's application and does not expect to release any decision before or on January 3rd. As stated in Interior's Notice of Availability for the FEIS, "[s]election of the Preferred Alternative [in the FEIS] does not indicate the Department's final decision because the Department must complete its review process." FEIS Notice of Availability, 89 Fed. Reg. 92,712. "Interior's review of Coquille's application remains ongoing, and a Record of Decision regarding the application has not been issued." Ex. 1, Declaration of Bryan Newland ("Newland Decl.") ¶ 14.

## LEGAL STANDARDS

"Temporary restraining orders and preliminary injunctions are 'extraordinary remed[ies] that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Lofton v. Dist. of Columbia*, 7 F. Supp. 3d 117, 120 (D.D.C. 2013) (citation omitted). When deciding whether to grant a temporary restraining order, the Court analyzes the same factors used in a request for a preliminary injunction. *Gordon v. Holder*, 632 F.3d 722, 723-24 (D.C. Cir. 2011). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, (2008)).

---

[5] FEIS Vol. II 1-4, ECF No. 2-2 at 125; Dep't of Interior, Bureau of Indian Affairs, Notice of availability of Final Environmental Impact Statement for the Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, City of Medford, Jackson County, Oregon ("FEIS Notice of Availability"), 89 Fed. Reg. 92712 (Nov. 22, 2024), *available at* https://coquille-eis.com/wp-content/uploads/2024/11/Federal-Register_BIA-NOA-2024-27409.pdf.

To prevail in a request for a preliminary injunction, a plaintiff "must demonstrate 1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C. Cir.1995). "If the plaintiff makes a particularly weak showing on one factor . . . the other factors may not be enough to compensate." *Dodd v. Fleming,* 223 F. Supp. 2d 15, 20 (D.D.C. 2002) (citations omitted). In fact, "if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors." *Id.* (citing *CityFed Fin. Corp.,* 58 F.3d at 747).

## **ARGUMENT**

### I.    **Plaintiffs are unlikely to succeed on the merits of their claims**.

Plaintiffs are unlikely to succeed on the merits of their claims for multiple independent reasons. First, they cannot state a claim under the APA because Interior has not yet taken any final agency action. Second, Plaintiffs lack both constitutional and prudential standing, because their claims of injury rely on speculative assumptions about how Interior will decide Coquille's land-to-trust proposal, and because they allege purely economic injuries that in any event fall outside NEPA's zone of interests. The Court should deny Plaintiffs' Motion based on those deficiencies alone. But Plaintiffs are also unlikely to succeed on their substantive claims because their NEPA arguments relying on *Marin Audubon* lack merit and they have not shown that Interior failed to meaningfully consult with them.

### A.    Plaintiffs have not challenged any final agency action.

NEPA does not create a private right of action, and Plaintiffs' claim is therefore reviewed under the APA, 5 U.S.C. §§ 701-706, *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996). The APA permits review only of "final agency action." 5 U.S.C. § 704; *Pub. Citizen*

*v. U.S. Trade Representative*, 5 F.3d 549, 551 (D.C. Cir. 1993). Thus, a plaintiff must identify a

final agency action to state a claim under the APA. *Karst Env'tl Educ. & Prot., Inc. v. EPA*, 475

F.3d 1291, 1297-98 (D.C. Cir. 2007). "[C]ourts routinely dismiss NEPA claims in cases where

agencies are merely contemplating a particular course of action but have not actually taken any

final action at the time of suit." *Pub. Citizen v. U.S. Trade Representative*, 970 F.2d 916, 920

(D.C. Cir. 1993). "To be final, an [agency] action must (1) 'mark[ ] the consummation of the

agency's decisionmaking process' and (2) be one by which 'rights or obligations have been

determined, or from which legal consequences will flow.'" *Am. Anti-Vivisection Soc'y v. USDA*,

946 F.3d 615, 620 (D.C. Cir. 2020) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

Plaintiffs contend that Interior's FEIS is a reviewable final agency action because it

"marks Defendants' last word on whether the Coquille's proposed Medford casino will pose

environmental impact." Pls.' Mot. for TRO & Prelim. Inj. 19, ECF No. 2-1 (Pls.' Mot.). That is

incorrect. As this court has explained, because an agency "can change its mind (or, more

precisely, has not yet made up its mind) until it issues a Record of Decision . . . [t]he EIS is

therefore not a final agency action." *Sierra Club v. U.S. Dep't. of Energy*, 825 F. Supp. 2d 142,

156-57 (D.D.C. 2011).[6] Interior's Notice of Availability for the FEIS confirms that Interior has

not made any decision on Coquille's application: as Interior explained, "[t]he information and

analysis contained in the FEIS . . . will assist the Department in its review of the issues presented

in the Tribe's application." FEIS Notice of Availability, 89 Fed. Reg. 92712. Interior continued

to accept public comments on the FEIS and is still preparing its final decision based on the

---

[6] That an EIS is not final agency action does not insulate its analysis from judicial review. As
Section 704 of the APA explains, "[a] preliminary, procedural, or intermediate agency action or
ruling not directly reviewable is subject to review on review of the final agency action." 5 U.S.C.
§ 704. Thus, while an EIS is not itself final agency action, the sufficiency of an agency's NEPA
analysis is routinely reviewed after an agency issues its final record of decision.

information gathered throughout the NEPA review process. Newland Decl. ¶ 14. As Interior

explained in Volume I of the FEIS:

> The response to comments . . . along with the revised Final EIS text,
> will be considered by the BIA prior to issuing a decision in the
> Proposed Action." FEIS Vol. 1 1-2, ECF No. 2-2 at 12. Following
> the 30-day waiting period for this Final EIS, BIA may decide on the
> proposed action. At the time the BIA makes its decision, a concise
> public Record of Decision (ROD) will be prepared . . . .

FEIS Vol. I 1-2, ECF No. 2-2 at 12. Thus, Interior's "[s]election of the Preferred Alternative [in

the FEIS] does not indicate the Department's final decision because the Department must

complete its review process." 89 Fed. Reg. 92,712.

As these statements demonstrate, Interior is still evaluating whether to approve Coquille's

application, and until Interior issues a final record of decision, there will be no "consummation

of the . . . decisionmaking process" "from which 'legal consequences will flow.'" *Bennett*, 520

U.S. at 177-78. Indeed, while *Sierra Club* confirms that an EIS is not a final agency action

sufficient for APA review, 825 F. Supp. 2d at 156-57, courts routinely recognize the finality of

agency records of decision. *See, e.g., Stand Up for Cal.! v. U.S. Dep't of the Interior.*, 994 F.3d

616, 620 (D.C. Cir. 2021) (stating that "the Department issued a Record of Decision ('ROD')

that *constituted the final agency action* to acquire the Elk Grove location in trust" for gaming)

(emphasis added);  *Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1115 (D.C. Cir.

2017) (finding that "the issuance of a ROD constitutes final agency action").[7]

---

[7] For these same reasons, Plaintiffs' claims are also unripe. "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296 (1998) (internal quotation marks omitted). Here, Plaintiffs' claims rely on speculation about the outcome of a decision Interior has not yet made, and therefore are also unripe. *See Sierra Club*, 825 F. Supp. 2d 154, 157 (finding plaintiffs' claims unripe because the EIS they challenged was not a final agency action).

This Court has denied injunctive relief in a similar situation. In *St. Croix Chippewa Indians of Wisconsin v. Kempthorne*, 535 F. Supp. 2d 33 (D.D.C. 2008), a plaintiff tribe likewise challenged a land-to-trust application that Interior had not yet acted on, and this Court denied a preliminary injunction because "plaintiff . . . failed to even demonstrate that the Court ha[d] the necessary authority under the APA to reach the merits of th[e] dispute." *Id.* at 37. There, as here, "the fact that judicial review may be completely obviated when Interior completes its review of the . . . application . . . emphasize[d] the prematurity of plaintiff's claim." *Id.*

Plaintiffs claim, incorrectly, that "[c]ourts regularly conclude that a FEIS is a final agency action." Pls.' Mot. 19 (internal quotation marks omitted). Notably, however, Plaintiffs cannot cite any D.C. Circuit or D.C. District Court case supporting their contrary proposition. Instead, Plaintiffs cite two out-of-circuit cases, neither of which stand for the proposition that a party may challenge an EIS before the agency's decision is made because resolving that question was not necessary to the outcome of either case. Pls.' Mot. 19 (citing *Pres. Coal. of Erie Cnty. v. Fed. Transit Admin.*, 356 F.3d 444 (2d Cir. 2004) and *Gros Ventre Tribe v. United States*, 344 F. Supp. 2d 1221 (D. Mont. 2004)).

In *Coalition of Erie County*, the Second Circuit stated in a footnote that "the final agency action occurred in February, 1999 with the issuance of the FEIS." 356 F.3d at 453 n.6. But the agency in that case had already issued a record of decision, "the final document in the administrative process," and it was not necessary for the Court to determine whether the FEIS on its own was sufficient to establish the final agency action. *Id.* Likewise, the court in *Gros Ventre Tribe* did not meaningfully evaluate whether the FEIS was an actual marker of the agency's decision, as there too the agency had already issued a record of decision. 344 F. Supp. 2d at 1225.

Here, by contrast, there is no record of decision, and Interior's own Notice of Availability confirms that no decision has been made. FEIS Notice of Availability, 89 Fed. Reg. 92,712. Rather than challenging a final agency action, Plaintiffs seek to prevent Interior from taking such a final action in the form of a record of decision in Coquille's land-to-trust application. Any challenge to Interiors' ultimate decision therefore is not ripe and Plaintiffs cannot show a likelihood of success on the merits because they fail to show that their claims are reviewable under the APA.

B.  Plaintiffs lack constitutional and prudential standing.

Plaintiffs contend that, *if* Interior takes Coquille's Medford property into trust, and Coquille proceeds with its planned casino development, then Coquille's future casino will compete for revenue with Plaintiffs' casinos and ultimately cause Plaintiffs economic harm. Those allegations fail to establish constitutional standing and fall outside the zone of interests that NEPA was designed to protect.

"For constitutional standing under Article III, a party must show that it has suffered an injury that is actual, imminent, or certainly impending." *Viasat, Inc. v. FCC*, 47 F.4th 769, 778 (D.C. Cir. 2022) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)). A "'speculative' possibility of future injury does not suffice." *Id.* "In addition, to pursue NEPA claims under the APA, the party must show that its injury 'is to the interests of the sort protected by NEPA.'" *Id.* at 779 (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 665 (D.C. Cir. 1996) (en banc)); *see also Bennett*, 520 U.S. at 162-63. The "injury that supplies constitutional standing must be the same as the injury within the requisite 'zone of interests.'" *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996).

Here, Plaintiffs' allegations of future economic harm are based entirely on Plaintiffs' assumptions about how Interior might decide an issue that it is still considering. They therefore

are precisely the type of speculative, non-imminent allegations of injury that cannot suffice to establish standing. Plaintiffs also allege purely economic, competitive harms that courts have repeatedly found outside NEPA's zone of interests.

1.      *Plaintiffs lack Article III standing.*

Plaintiffs' failure to identify any final agency action is also fatal to their standing. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org*., 426 U.S. 26, 37 (1976). "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "[T]he irreducible constitutional minimum of standing contains three elements." *Id.* A plaintiff must show (i) that they have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (ii) that there is a "causal connection between the injury and the conduct complained of[,]" and (iii) the plaintiff's injury would likely be redressed by a favorable decision on the merits. *Id.* (internal quotations and citations omitted). The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient.'" *Clapper*, 568 U.S. at 409 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "Standing is determined by the facts that exist at the time the complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001).

Here, Interior has not issued final decision on Coquille's land-to-trust application. It necessarily follows that Plaintiffs cannot claim injury based on a discretionary decision that Interior has not made. Instead, Plaintiffs' alleged injury is based on their prediction of how Interior will decide to exercise its decision-making authority, and is thus not the kind of "certainly impending" injury sufficient for standing. *Clapper*, 568 U.S. at 409. Indeed, Plaintiffs

recognize that Interior has not made a decision, stating that "*[i]f* Defendants take the Medford parcel into trust for the Coquille's proposed gaming project, their final decision will have the following adverse and likely irreversible impacts . . . ." Pls.' Mot. 27 (emphasis added). Plaintiffs thus "can only speculate as to how [Interior] . . . will exercise [its] discretion" in deciding whether to take the land into trust, and these speculative concerns regarding potential future harms from a future decision are not sufficient to support standing. *Clapper*, 568 U.S. at 412.

Plaintiffs cannot salvage their lack of standing by relying on supposed procedural injury. It is settled law that "'deprivation of a procedural right,' such as the right to comment, 'without some concrete interest that is effect by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Ctr. for Biological Diversity v. Bernhardt*, 442 F. Supp. 3d 97, 110 (D.D.C. 2020) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). Here, Plaintiffs contend that Defendants "fail[ed] to meaningfully consult with Plaintiffs," which "foreclosed Plaintiffs' ability to provide evidence" concerning the possible economic harm that would result from taking Coquille's property into trust. Pls.' Mot. 15. As explained above, however, Interior has not issued any decision on Coquille's application, and Plaintiffs therefore have not suffered any concrete injury related to that as-yet-unmade decision.

Moreover, even setting aside the lack of ripeness, an alleged failure to consult under NEPA is a purely procedural injury that is insufficient to independently establish standing. *See Eastern Band of Cherokee Indians v. U.S. Dep't of the Interior*, 534 F. Supp. 3d 86, 118-19 (D.D.C. 2021) (because plaintiffs failed to demonstrate a separate "concrete injury" that "could undergird their procedural right to greater consideration of [a] casino's impact," they lacked standing to argue that "NEPA . . . required Interior to consult with them while drafting its EA and FONSI."); *see also id.* at 95 (finding failure to consult under NEPA to be "merely a

procedural injury") (citing *Friends of Animals v. U.S. Bureau of Land Mgmt.*, 232 F. Supp. 3d 53, 67 (D.D.C. 2017)). Thus, "the alleged deprivation of an opportunity" to provide comments and evidence on the FEIS "cannot independently create standing." *Ctr. for Biological Diversity*, 442 F. Supp. 3d at 110. While Plaintiffs theoretically might be able to allege something more than deprivation of a procedural right in vacuo after a possible future decision, they cannot do so prior to that decision.

> 2.    *Plaintiffs allege purely economic harms that fall outside NEPA's zone of interest.*

NEPA is an environmental law that Congress enacted to promote environmental interests. *See* 42 U.S.C. § 4321; *see also Gunpowder Riverkeeper v. FERC*, 807 F.3d 267, 274 (D.C. Cir. 2015). Thus, "[t]he zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone." *Gunpowder Riverkeeper*, 807 F.3d at 274. For this reason, the D.C. Circuit has repeatedly rejected claims of competitive economic harm of the type Plaintiffs allege here as outside NEPA's zone of interests. *See, e.g.*, *Viasat*, 47 F.4th at 780 (alleged injury based on "FCC licens[ing] one of [plaintiff's] competitors" "is a pure economic harm well beyond the purview of NEPA."); *ANR Pipeline Co. v. FERC*, 205 F.3d 403, 408 (D.C. Cir. 2000) ("suppressing competition . . . is not within the zone of interests protected by NEPA."); *Mountain States*, 92 F.3d at 1235–36 ("NEPA's rather sweeping lists of interests . . . do not include purely monetary interests, such as the competitive effect that a construction project may have on a plaintiff's commercial enterprise.") (internal citation omitted).

Here, Plaintiffs' allegations of injury consist of future economic harm caused by competition from Coquille's planned casino. *See, e.g.*, Pls.' Mot. 15 (contending Plaintiffs will suffer "massive economic harm" "if the Coquille is permitted to develop a second casino in the heart of Medford."); *id.* at 26–29 (arguing that the "primary markets" for Plaintiffs' casinos

include the greater Medford area and discussing anticipated future competitive economic harm to their casino revenue). That competitive injury is precisely the type of "pure economic harm" that the D.C. Circuit has consistently found to be "well beyond the purview of NEPA." *Viasat*, 47 F.4th at 780. Plaintiffs therefore lack prudential standing to pursue a NEPA claim under the APA. *See id.* at 779.

C. Plaintiffs are not likely to succeed on the merits of their substantive NEPA claims.

The Court need not, and should not, reach Plaintiffs' substantive NEPA arguments, because Plaintiffs' failure to identify a final agency action and lack of both constitutional and prudential standing are each separately dispositive of their motion. Should the Court reach those substantive NEPA arguments, it should also deny Plaintiffs' Motion because their substantive claims are unlikely to succeed on the merits.

1. *Plaintiffs' claims concerning* Marin Audubon *lack merit.*

As explained above, because Plaintiffs fail to challenge a final agency action, lack standing, and allege purely economic injuries that fall outside NEPA's zone of interests, this Court can find that Plaintiffs are unlikely to succeed on the merits of their claims without reaching Plaintiffs' arguments concerning *Marin Audubon*. And as explained below, the Court can also deny Plaintiffs' Motion for the independent reasons that Plaintiffs fail to show irreparable harm or that the balance of equities and public interest tip in their favor. *See infra* Sections II and III. The Court may also wish to avoid reaching the merits of Plaintiffs' arguments concerning *Marin Audubon* given that both parties to *Marin Audubon* have petitioned for rehearing and those petitions are pending, such that the panel's decision may be significantly modified. *See*, Pet. for Reh'g En Banc by Fed. Resp's, *Marin Audubon Soc'y v. FAA*, No. 23-1067 (D.C. Cir. Nov. 27, 2024), Doc. 2088265; Pet'rs Reh'g Pet. *Marin Audubon Soc'y v. FAA*, No. 23-1067 (D.C. Cir. Dec. 5, 2024), Doc. 2087208; *see also Ely v. U.S. Parole Comm'n*, 1987

15

WL 11425, at *1 (D.D.C. May 20, 1987) (staying case pending *en banc* decision that was "highly pertinent" to the case); *United States v. Germano-Tanka*, 2024 WL 3316312, at *1 (D. Haw. July 5, 2024) ("because a petition for rehearing en banc is pending in the Ninth Circuit, the court determines that it is in the interests of justice to stay the pending [ ] motion until the Ninth Circuit determines whether to hear the matter en banc."). However, should the Court nonetheless reach this claim, it provides an additional basis for denying Plaintiffs' Motion because Plaintiffs' NEPA arguments relying on *Marin Audubon* lack merit.

Plaintiffs contend that the FEIS is invalid because it cited, and relied upon, regulations issued by the Council on Environmental Quality (CEQ), which a divided panel of the D.C. Circuit recently stated are *ultra vires. See* Pls.' Mot. 20–26 (relying on *Marin Audubon*, 121 F.4th at 908–15). Plaintiffs make the sweeping argument that, if CEQ lacked authority to promulgate judicially enforceable regulations, then a NEPA document like the FEIS here that relies on those regulations is by extension also *ultra vires*. *See* Pls.' Mot. 23. That argument is wrong for several reasons.

If this Court reaches Plaintiffs' arguments despite the pending en banc petitions, Plaintiffs' claim still fails. To start, nothing in *Marin* suggests that every NEPA review conducted by a federal agency that cites or relies on the CEQ regulations is invalid. To the contrary, after stating that the CEQ regulations are *ultra vires*, the *Marin* panel proceeded to evaluate the agencies' NEPA analyses based on petitioners' separate arguments that were made "without invoking CEQ regulations." *Marin Audubon Soc'y v. FAA*, 121 F. 4th 902, 915 (D.C. Cir. 2024). Had the panel concluded that the agencies' NEPA analyses were invalid based solely on their citations to the CEQ regulations, it would have had no need to consider petitioners' alternative arguments that were not based on those regulations.

Furthermore, there is no dispute that NEPA requires federal agencies to assess the environmental impacts of all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). Indeed, in 2023 amendments to NEPA, Congress specifically endorsed the use of "an environmental impact statement with respect to a proposed agency action . . . that has a reasonably foreseeable significant effect on the quality of the human environment." 42 U.S.C. § 4336(b)(1). Plaintiffs therefore cannot be correct that "Defendants' issuance of the FEIS was *ultra vires*," Pls.' Mot. 23. To succeed in that argument, Plaintiffs would need to "show a 'patent violation of agency authority." *Am. Clinical Laboratory Ass'n v. Azar*, 931 F.3d 1195, 1208 (D.C. Cir. 2019) (quoting *Indep. Cosmetic Mfrs. & Distribs., Inc. v. U.S. Dep't of Health, Educ. & Welfare*, 574 F.2d 553, 555 (D.C. Cir. 1978)). But here, Interior had the authority—indeed, the obligation—to comply with NEPA by assessing the environmental impacts of Coquille's land-to-trust application. Plaintiffs can make no serious argument to the contrary.

Nor have Plaintiffs argued that Interior's analysis of mitigation measures—or any other aspect the FEIS that relied on the CEQ's regulations—violated Interior's statutory obligations under NEPA. *See id.* For example, Plaintiffs quote the FEIS's assertion that the CEQ regulations "*require* that mitigation measures be developed for all of a proposed action's effects on the environment where it is feasible to do so." Pls.' Mot. 22 (quoting FEIS Vol. II, p. 5-1). But Plaintiffs do not even attempt to argue that Interior's consideration of mitigation measures violates NEPA.[8] For all these reasons, Plaintiffs are not likely to succeed on the merits of their

---

[8] Plaintiffs also do not argue that they were in any way injured by Interior's citation to the CEQ regulations, which is yet another reason that they lack standing to pursue this claim. *See supra* Section I.B; *TransUnion, LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (plaintiffs must establish standing "for each claim that they press and for each form of relief that they seek.").

NEPA claim based on *Marin Audubon*.

2.    *Plaintiffs are unlikely to succeed on their failure to consult claims.*

Plaintiffs also are unlikely to succeed on the merits of their consultation claims. As an initial matter, Plaintiffs' allegation that Interior failed to adequately consult with them before issuing a decision is unripe because *Interior still has not yet issued any decision*.[9] Once Interior issues a decision, and assuming all jurisprudential requirements are met, Plaintiffs could challenge that decision at the appropriate juncture, including on grounds related to consultation. And the Court could review those claims based on the administrative record that the agency compiles consistent with APA practice. Until that time, Plaintiffs' claims are premature.[10] *See Papago Tribal Utility Auth. v. Fed. Energy Regul. Comm'n*, 628 F.2d 235, 240 (D.C. Cir. 1980) ("Replacing one comprehensive judicial review proceeding, based on a full record, with piecemeal proceedings . . . would be a poor technique of judicial administration, with unfortunate consequences for courts, agencies, and litigants as well.").

Even setting that aside, Plaintiffs still have not shown a likelihood of success on the merits of their consultation claims. Plaintiffs claim that Interior "completely bypassed their statutory duty to consult with Tribal governments." Pls.' Mot. 25. But Plaintiffs fail to disclose

---

[9] Plaintiffs appear to recognize that aspects of their claims are unripe, including any challenge to Interior's application of IGRA. *See* Pls.' Mot. 25 n.9. But Plaintiffs fail to acknowledge that—for the same reason—their consultation claims are unripe in their entirety.

[10] As noted *supra* n.7, Plaintiffs' claims are also unripe. Reviewing them on the merits now would thus be both improper and inefficient. *See, e.g.*, *Zukerberg v. D.C. Bd. of Elections & Ethics*, 999 F. Supp. 2d 79, 83 (D.D.C. 2013) (the ripeness "doctrine's purpose is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . until [a] . . . decision has been formalized and its effects felt in a concrete way by the challenging parties.'") (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)).

that Interior officials met with representatives from Cow Creek, Karuk, and Tolowa Dee-ni'

numerous times in order to discuss each Tribes' concerns. Newland Decl. ¶¶ 7–12. In fact,

Assistant Secretary for Indian Affairs Bryan Newland and/or members of his staff met with

Plaintiffs at least *six times* between February 2023 and December 2024, including hosting four

in-person meetings with Plaintiffs at Interior's Washington D.C. headquarters. Newland Decl.

¶ 11.

      Plaintiffs also claim that "the numerous comment letters submitted by Tribal nations . . .

[were] ignored." Pls.' Mot., 25. But Interior addressed any comments submitted during the

NEPA environmental review process in the FEIS. *See,* e.g., FEIS Vol. 1, 3-28–29, 3-40–47, ECF

2-2 at 46-47, 58-65 (responses to comments submitted by Cow Creek and members);[11] FEIS Vol.

I, 3-28, 3-31–40, ECF No. 2-2 at 46, 49-58 (responses to comments submitted by Karuk and

members);[12] FEIS Vol. I, 3-29, ECF No. 2-2 at 47 (responses to comments submitted by Tolowa

Dee-ni' and members).[13] Thus, while Plaintiffs may disagree with Interior's analysis, they cannot

successfully show that their comments were ignored.

      In addition, the FEIS further confirms that Interior consulted with Plaintiffs and evaluated

impacts to surrounding communities. *See,* e.g., FEIS Vol. II, 2-30–31, ECF No. 2-2 at 156-57

(comparing the different impacts of the proposed project and the possible alternatives in

"Comparison of Environmental and Economic Consequences"); *see also* FEIS Vol. II, 3-45–49,

ECF No. 2-2 at 203-07 (considering the socioeconomic conditions of the affected community);

---

[11] Comments submitted by and on behalf of Cow Creek members include T1, T6, T11, and T13.

[12] Comments submitted by and on behalf of the Karuk Tribe and its members include T2 and T10.

[13] Comments submitted by and on behalf of the Tolowa Dee-ni' Nation and its members include T4 and T7.

FEIS Vol. II, 4-18–38, ECF No. 2-2 at 277-97 (evaluating the different impacts of each alternative on the affected community in more detail). The FEIS further observes that "'competition…is not sufficient, in and of itself, to conclude [there would be] a detrimental impact on' a tribe." FEIS Vol. II, 4-23, ECF No. 2-2 at 282 (quoting *Citizens for a Better Way v. U.S. Dep't of the Interior*, No. 2:12-CV-3021-TLN-AC, 2015 WL 5648925, at *9 (E.D. Cal. Sept. 24, 2015); *see also Stand up for Cal.!*, 919 F. Supp. 2d 51, 76 (D.D.C. 2013). Thus, as the FEIS documents, Plaintiffs were consulted throughout Interior's NEPA process and they therefore are not likely to succeed on the merits of their consultation-related claim. A court will uphold an agency's consultation process where it relies on its own tribal consultation regulations and complies meaningfully and in good faith, *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 155–56 (D.D.C. 2017), as Interior did here. Plaintiffs have not shown a likelihood of success on their consultation claims.

## II.    Plaintiffs fail to identify any irreparable harm that would occur in the absence of emergency relief.

The Court should also deny Plaintiffs' Motion because Plaintiffs have failed to identify an irreparable harm that would warrant preliminary relief. Failure to show irreparable harm is independently sufficient to defeat Plaintiffs' Motion. *See Novartis Pharmaceuticals Corp. v. Becerra*, No. 24-CV-02234 (DLF), 2024 WL 3823270, *4 (D.D.C. Aug. 13, 2024) ("Failure to show a likelihood of irreparable harm is sufficient to defeat a motion for a preliminary injunction 'even if the other three factors entering calculus merit such relief.'") (quoting *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)). "The D.C. Circuit 'has set a high standard for irreparable injury.'" *Id.* (quoting *Mdewakanton Sioux Indians of Minn. v. Zinke*, 255 F. Supp. 3d 48, 52 (D.D.C. 2017) (internal citation omitted)). "First, the injury must be both certain and great; it must be actual and not theoretical. The moving party must show the injury

complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. Second, the injury must be beyond remediation." *Chaplaincy*, 454 F.3d at 297 (cleaned up).

Plaintiffs' Motion fails at both steps. *First*, for the same reasons that Plaintiffs lack Article III standing, they cannot show the type of imminent, certainly impending injury necessary to establish irreparable harm. *See supra* Section I.B.1. Plaintiffs' allegations of future economic harm (*see* Pls.' Mot. 26–29) all hinge on a prediction of how Interior will exercise its discretionary decision-making authority. Their anticipated harm therefore cannot be "'of such *imminence'* that equitable relief is urgently necessary," as would be required to justify preliminary relief. *See Chaplaincy*, 454 F.3d at 298. Instead, because it depends on the outcome of a decision that Interior has not yet made, Plaintiffs' allegations posit a "mere 'possibility of irreparable harm' at some unspecified point in the future" that courts have found do not warrant preliminary relief. *See Novartis*, 2024 WL 3823270, at *4 (quoting *Chaplaincy*, 454 F.3d at 297). Thus, just as Plaintiffs' injury allegations are insufficient to support standing, they also fail to establish irreparable harm that would warrant a preliminary injunction.[14]

Moreover, in the D.C. Circuit, it is "well settled that economic loss does not, in and of itself, constitute irreparable harm." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *Novartis*, 2024 WL 3823270, at *4. To establish irreparable harm, "[m]onetary loss, even

---

[14] Plaintiffs' allegations of procedural injury are also insufficient to establish irreparable harm. As a court in this District has recognized, an allegation of harm based on lack of consultation under NEPA is, "[a]t its core," "a procedural one" that did not justify preliminary injunctive relief. *See Eastern Band of Cherokee Indians v. Dep't of Interior*, 2020 WL 2079443, at *4 (D.D.C. Apr. 30, 2020). Indeed, "a chorus of federal courts . . . has found that procedural injury, standing alone, cannot constitute irreparable harm." *Id.* (gathering cases). *See also, e.g., Friends of Animals v. U.S. Bureau of Land Mgmt.*, 232 F. Supp. 3d 53, 67 (D.D.C. 2017) ("[A] procedural harm arising from a NEPA violation is insufficient, standing alone, to constitute irreparable harm justifying a preliminary injunction.") (citation omitted).

irretrievable monetary loss" must be "so severe as to cause extreme hardship to the business or threaten its very existence." *Mylan Lab'ys Ltd. v. FDA*, 910 F. Supp. 2d 299, 313 (D.D.C. 2012) (cleaned up). Here, Plaintiffs speculate that unidentified individuals will travel to an unbuilt casino, thereby decreasing Plaintiffs' casinos' revenue. *See* Pls.' Mot 27. They also contend that, as a result of that decrease in revenue, they will "likely be forced to make new investments to remain competitive," that their respective "governments are likely to receive declining gaming revenues, thereby reducing the funding available to tribal governmental programs," and that they may need to reduce their "payments to charitable initiatives in Medford and the surrounding region." *Id.* Even setting aside that these allegations are speculative since Interior has not made any decision on Coquille's application, they still would not constitute the type of "extreme hardship" that the D.C. Circuit requires to establish irreparable harm.

*Second*, Plaintiffs cannot show that any injury would be beyond remediation. Should Interior decide to take Coquille's Medford property into trust, Plaintiffs could challenge that decision (assuming all other jurisprudential requirements were met). And any harm to Plaintiffs that may emanate from Interior implementing a decision to take the land into trust would not be irreparable. The Supreme Court made clear in *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209 (2012), that a challenge to Interior's decision to take land into trust is "a garden-variety APA claim." 567 U.S. at 220. *Patchak* thus "squarely addressed the supposedly irreparable harm that Plaintiff[] complain[s] of and indicated that federal district courts do have the power to strip the federal government of title to land taken into trust for an Indian tribe under the APA[,]" *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Salazar*, No. 12-cv-3021, 2013 WL 417813, at *4 (E.D. Cal. Jan. 30, 2013). Courts have repeatedly denied motions for preliminary injunctive relief seeking to enjoin Interior from taking

land into trust on this basis. *See, e.g.*, *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty.*, 2013 WL 417813, at *3; *Stand up for Cal.!*, 919 F. Supp. 2d at 81–83; *Town of Verona v. Jewell*, No. 08-cv-0647, 2014 WL 12894093, at *3 (N.D.N.Y. Aug. 12, 2014). The Court should do the same here.[15]

### III.    Neither the balance of equities nor the public interest weigh in Plaintiffs' favor.

Finally, Plaintiffs allege only speculative harms that are outweighed by the negative impacts of enjoining the Interior from making a decision on the Coquille's application. Therefore, Plaintiffs cannot satisfy the third and fourth factors for emergency relief. The balance of equities and public interest factors "merge" when the government is a party. *See Nken v. Holder,* 556 U.S. 418, 435 (2009); *see also Padgett v. Vilsack*, No. CV 24-2425 (LLA), 2024 WL 4006050, *2 (D.D.C. Aug. 30, 2024).* "last two factors merge because 'the government's interest *is* the public interest.'" *Booth v. Bowser*, 597 F. Supp. 3d 1, 10–11 (D.D.C. 2022) (quoting *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 102 (D.C. Cir. 2021)).

Coquille and its members should not be made to wait for a decision by the Interior due to the purely speculative harms that Plaintiffs allege. And Interior, as an Executive Branch agency, should be permitted to conclude its decision-making process without pre-decisional judicial oversight. By contrast, if Plaintiffs disagree with any decision that Interior might make in the

---

[15] Plaintiffs' Motion also makes a passing statement that Coquille's proposed renovation of an existing bowling alley to develop a casino "may also irreversibly alter the Medford site, and any remaining environmental, ecological, and cultural resources located thereon." Pls.' Mot. 28. But Plaintiffs' Complaint never alleges the existence of any such resources on the 2.4 acres that Coquille has asked Interior to take into trust, which currently consists of an existing bowling alley. Likewise, the declarations that Plaintiffs cite make no mention of such resources. Plaintiffs therefore have not adequately alleged any likelihood of the existence of such resources, much less any related injuries to Plaintiffs.

future, they can seek judicial review at that time. Therefore, Plaintiffs do not show that the balance of equities or the public interest weigh in their favor here.

## **CONCLUSION**

Plaintiffs ask this Court to prohibit Interior from making a decision on Coquille's land-to-trust application. That request runs counter to basic principles of judicial review under the APA. And because their allegations of injury rely on speculation as to how Interior will decide Coquille's application, Plaintiffs lack standing. This Court should deny Plaintiffs' Motion for those reasons alone. Plaintiffs also lack prudential standing; are unlikely to succeed on the merits of their substantive claims; have not shown that they will suffer any irreparable harm absent a temporary restraining order or preliminary injunctive relief; and have not established that the balance of equities or the public interest weigh in their favor. Plaintiffs' Motion should be denied.

Respectfully submitted this 31st day of December, 2024.

TODD KIM
ASSISTANT ATTORNEY GENERAL

*/s/ Angela N. Ellis*
ANGELA N. ELLIS
DEVON TICE
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
Ben Franklin Station, P.O. Box 7611
Washington, DC 20044-7611
(202) 305-0456 (Ellis)
202-514-4352 (Tice)
angela.ellis@usdoj.gov
devon.tice@usdoj.gov

*Counsel for Defendants*

24