## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COW CREEK BAND OF UMPUQUA TRIBE OF INDIANS; THE KARUK TRIBE; and TOLOWA DEE-NI' NATION,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>U.S. DEPARTMENT OF THE INTERIOR; DEB HAALAND, in her official capacity as Secretary of the Interior; BUREAU OF INDIAN AFFAIRS; BRYAN NEWLAND, in his official capacity as Assistant Secretary–Indian Affairs; BRYAN MERCIER, in his official capacity as Director, Bureau of Indian Affairs; and RUDY PEONE, in his official capacity as Acting Regional Director, Northwest Region, Bureau of Indian Affairs,<br><br>    *Defendants.* | Case No. 1:24-cv-03594-APM |

## COQUILLE INDIAN TRIBE'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

BACKGROUND ................................................................................................................... 2

I.      The Coquille Indian Tribe ........................................................................................ 2

II.     Medford Parcel Fee-to-Trust Proceedings ............................................................. 5

III.    This Action ............................................................................................................... 6

LEGAL STANDARD ........................................................................................................... 7

ARGUMENT ....................................................................................................................... 8

I.      The Coquille Indian Tribe Has a Right to Intervene ............................................... 8

        A.      Coquille's Intervention Is Timely. ............................................................... 8

        B.      Coquille Has Significant Protectable Interests. .......................................... 9

        C.      Coquille's Interests May Be Impaired by the Outcome of this Action ........ 10

        D.      Defendants Will Not Adequately Represent Coquille's Interests. .............. 12

II.     In the Alternative, the Court Should Permit the Tribe to Intervene ...................... 14

CONCLUSION .................................................................................................................. 15

# TABLE OF AUTHORITIES[*]

**CASES**

*Alcea Band of Tillamooks v. United States*, 59 F. Supp. 934 (Ct. Cl. 1945), *aff'd*, 329 U.S. 40 (1946).................................................................................................2

*American Hospital Ass'n v. Burwell*, 812 F.3d 183 (D.C. Cir. 2016) ..........................14

*In re American Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004)...........11

*Atx, Inc. v. United States Department of Transportation*, 41 F.3d 1522 (D.C. Cir. 1994) ..............................................................................................................................7

*Campaign Legal Center v. Federal Election Commission*, 68 F.4th 607 (D.C. Cir. 2023) ..............................................................................................................................9

*Cayuga Nation v. Zinke*, 324 F.R.D. 277 (D.D.C. 2018)................................................9

*Connecticut v. United States Department of Interior*, 344 F. Supp. 3d 279 (D.D.C. 2018) ............................................................................................................................13

*Crossroads Grassroots Policy Strategies v. Federal Election Commission*, 788 F.3d 312 (D.C. Cir. 2015) ........................................................................7, 10, 12, 13

*Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) .................................11

*Forest County Potawatomi Community v. United States*, 317 F.R.D. 6 (D.D.C. 2016) .........................................................................................10, 11, 12, 13, 14

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728 (D.C. Cir. 2003) .........................8, 9, 10, 11, 12

*Hodgson v. United Mine Workers of America*, 473 F.2d 118 (D.C. Cir. 1972) .............................8

*Jones v. Prince George's County*, 348 F.3d 1014 (D.C. Cir. 2003)...............................8

*Mandan, Hidatsa & Arikara Nation v. United States Department of the Interior*, 66 F.4th 282 (D.C. Cir. 2023) ................................................................................10, 11, 12

*Maverick Gaming LLC v. United States*, No. 35136, --- F.4th ----, 2024 WL 5100829 (9th Cir. Dec. 13, 2024) ...............................................................................13

*Michigan Gambling Opposition v. Norton*, Civ. A. No. 05-01181, 2005 WL 8169574 (D.D.C. Sept. 1, 2005) ................................................................................15

*Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998)....................................10

---

[*] Authorities upon which we chiefly rely are marked with an asterisk.

*Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ......................................9

*Public Citizen Health Research Group v. Auchter*, 702 F.2d 1150 (D.C. Cir. 1983) (per curiam)......................................................................................................................11

*Roane v. Leonhart*, 741 F.3d 147 (D.C. Cir. 2014) ....................................................................8

*Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5 (D.D.C. 2019) ...........................................................................................9, 12, 14, 15

## STATUTES

5 U.S.C. § 706(a)(2)...................................................................................................................7

25 U.S.C. § 2703(4) ....................................................................................................................4

25 U.S.C. § 2710(b)(1) ................................................................................................................4

25 U.S.C. § 2719(a) ....................................................................................................................4

25 U.S.C. § 2719(b)(1)(B)(iii) ......................................................................................................4

25 U.S.C. § 5110 .........................................................................................................................3

42 U.S.C. § 4336a(g)(1)(A) .........................................................................................................5

Act of Aug. 13, 1954, ch. 733, 68 Stat. 724 (formerly codified at 25 U.S.C. § 691) .....................3

Act of June 18, 1934, ch. 576, 48 Stat. 984 (codified at 25 U.S.C. § 5108)...................................3

Coquille Restoration Act, Pub. L. No. 101-42, 103 Stat. 91 (1989) (formerly codified at 25 U.S.C. §§ 715–715g) .............................................................................1, 3, 4

Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701–2721 ..............................................................1

Indian Reorganization Act, 25 U.S.C. §§ 5101–5129 ....................................................................1

## OTHER AUTHORITIES

Bureau of Indian Affs., U.S. Dep't of the Interior, *Final Environmental Impact Statement: Coquille Indian Tribe Fee-To-Trust and Gaming Facility Project* (Nov. 2024), https://coquille-eis.com/wp-content/uploads/2024/11/3_Coquille-FTT-and-Gaming-Facility-Final-EIS-Vol-II-Nov-2024-508C.pdf ...........................................6

Bureau of Indian Affs., U.S. Dep't of the Interior, *Notice of Comment Extension and Second Hearing for Draft Environmental Impact Statement*, https://coquille-eis.com/wp-content/uploads/2022/12/Notice-of-Extension.pdf.......................6

"The Coos and Coquille: A Northwest Coast Historical Anthropology" Dissertation by Mark Axel Tveskov, August 2000 .......................................................................2

Draft Environmental Impact Statement for the Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, 87 Fed. Reg. 72,505 (Nov. 25, 2022) ..........................................6

Final Environmental Impact Statement for the Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, 89 Fed. Reg. 92,712 (Nov. 22, 2024) ..........................................6

Intent to Prepare an Environmental Impact Statement for the Proposed Coquille Indian Tribe Fee-to-Trust and Casino Project, 80 Fed. Reg. 2120 (Jan. 15, 2015) .........................................................................................................................5

U.S. Dep't of the Interior, Final Decision Coquille Disapproval (May 27, 2020), https://www.bia.gov/sites/default/files/dup/assets/as-ia/oig/gaming_decisions/Final%20Decision%20Coquille%20Dissaproval%2005-27-2020.pdf .....................................5

Notice of Cancellation of Environmental Impact Statement for Proposed Coquille Indian Tribe Fee-To-Trust and Gaming Facility Project, 85 Fed. Reg. 55,026 (Sept. 3, 2020).......................................................................................................5

Resumption of Preparation of an Environmental Impact Statement for the Proposed Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, 86 Fed. Reg. 73,313 (Dec. 27, 2021) ...........................................................................................5

Through this action, Plaintiffs Cow Creek Band of Umpqua Tribe of Indians, the Karuk Tribe, and Tolowa Dee-Ni' Nation (collectively, "Cow Creek" or "Plaintiffs") attempt to prevent the Coquille Indian Tribe ("Coquille") from commencing gaming operations on a 2.42-acre parcel of Coquille-owned land in the City of Medford (the "Medford Parcel"), in Jackson County, Oregon—a county that Congress specifically identified when authorizing the Secretary of the Interior to take land into trust for Coquille's benefit. Specifically, Plaintiffs seek to halt the Secretary of the Interior's acquisition of the Medford Parcel into trust for Coquille before the Secretary or her designee has actually made any final determination. While this administrative process is still not final—a defect fatal to Plaintiffs' claims—it has already taken Interior more than 12 years as the result of repeated disregard for Coquille's rights under the Coquille Restoration Act ("CRA"), Pub. L. No. 101-42, 103 Stat. 91 (1989) (formerly codified at 25 U.S.C. §§ 715–715g), the Indian Reorganization Act ("IRA"), 25 U.S.C. §§ 5101–5129, and the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721.

This action and motion for a temporary restraining order ("TRO") represent a last-ditch effort by Plaintiffs to advance their economic interests impede Coquille's pursuit of self-determination as it endeavors to recover from decades of congressional termination policy, the effects of which are still felt to this day.

The adjudication of Plaintiffs' complaint—which argues that the "restored lands" exception to the prohibition against gaming on new tribal trust acquisitions does not apply to the Medford Parcel—*see, e.g.*, Compl. ¶¶ 42–44, 47–48, 52–53, 58, 61, 65, 68–69—has sweeping consequences for Coquille that extend far beyond the determination with respect to the Medford Parcel, going to the heart of Coquille's core sovereign interests. To safeguard those interests and to advocate its unique perspectives on the legal and procedural validity of this fee-to-trust process,

Coquille hereby moves, pursuant to Federal Rule of Civil Procedure 24, to intervene as of right or, in the alternative, to permissively intervene.  In accordance with Coquille's desire to facilitate judicial resolution of Plaintiffs' claims, Coquille further represents that it will not move to dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19.

Coquille's counsel hereby certifies that pursuant to LCvR 7(m), counsel has met and conferred with Plaintiffs' counsel and counsel for the Federal Defendants regarding this motion. Plaintiffs oppose the filing of this motion.  Federal Defendants take no position regarding Coquille's motion.

Coquille request that this Court permit Coquille to participate in oral argument.

## BACKGROUND

### I.    The Coquille Indian Tribe

In 1851 and 1855, the Coquille Indian Tribe and the United States negotiated treaties.  *See Alcea Band of Tillamooks v. United States*, 59 F. Supp. 934, 937 (Ct. Cl. 1945), *aff'd*, 329 U.S. 40 (1946).  However, the United States Senate never ratified either treaty, and no reservation was established for Coquille.  Some Coquille Indians remained in their ancestral homelands in Coos County, Oregon, while others were forcibly removed to the Siletz Reservation to the north and confederated with multiple bands and tribes.  *See id.*  Following removal, Coquilles were dispossessed of virtually all lands they historically occupied. 2.    "The Coos and Coquille: A Northwest Coast Historical Anthropology" Dissertation by Mark Axel Tveskov, August 2000, pp. 452-453.

On June 18, 1934, Congress enacted the Indian Reorganization Act, or IRA.  Section 5 of the IRA "authorize[s]" the Secretary, in her discretion, to acquire any interest in lands, within or without existing reservations, for the purpose of providing land for Indians, and specifies that title

for such lands shall be taken in the name of the United States in trust for the Indian tribe.  Act of June 18, 1934, ch. 576, § 5, 48 Stat. 984, 985 (codified at 25 U.S.C. § 5108).  Section 7 of the IRA "authorize[s]" the Secretary "to proclaim new Indian reservations on lands acquired pursuant to any authority conferred by this Act, or to add such lands to existing reservations: *Provided*, That lands added to existing reservations shall be designated for the exclusive use of Indians entitled by enrollment or by tribal membership to residence at such reservations."  25 U.S.C. § 5110.  However, no lands were acquired and no reservation was proclaimed for the Coquille Tribe in the immediate aftermath of the IRA's enactment.

To the contrary, on August 13, 1954, Congress enacted the Western Oregon Termination Act, which established a process for terminating "the Federal trust relationship to the affairs" of several dozen tribes, including the Lower and Upper Coquille Tribes and their members.  Act of Aug. 13, 1954, ch. 733, §§ 2(a), 13(a), 68 Stat. 724, 727 (formerly codified at 25 U.S.C. § 691). "Termination" is the euphemistic term for literally destroying the political existence of an Indian Tribe. The Termination Act expressly provided that the IRA "shall not apply" to the Coquille tribes and their members once the trust relationship was terminated.  *Id.* § 19, 68 Stat. 728.  Coquille's economy collapsed unsurprisingly, and its members dispersed in search of jobs across a five-county region of Oregon.

On June 28, 1989, in an effort led by Oregon Senator Mark O. Hatfield, Congress reversed course, enacting the Coquille Restoration Act, Pub. L. No. 101-42, 103 Stat. 91 (1989) (formerly codified at 25 U.S.C. §§ 715–715g).  The CRA extended Federal recognition to Coquille, restored the tribal rights and privileges that had been lost under the Termination Act, generally made applicable to Coquille "all laws and regulations of general application to Indians or [Indian

tribes]," and expressly made the IRA "applicable to the Tribe and its Members." *Id.* § 3(a), (b), (c), (e).

The CRA made "[m]embers of the Tribe in the Tribe's service area," *id.* § 3(c)—which the Act defines as "the area composed of Coos, Curry, Douglas, Jackson, and Lane Counties in the State of Oregon," *id.* § 2(5)—"eligible … for all … Federal services available to members of federally recognized tribes residing on a reservation," *id.* § 3(c). Due to migration that occurred during the Coquille's 35 years of termination, all five counties contained sizable concentrations of Coquille population at the time of restoration.

In recognition of this reality, Section 5 of the CRA required the Secretary of the Interior to take 1,000 acres of land in Curry and Coos County into trust for Coquille. And it further provides, "The Secretary may accept any additional acreage in the Tribe's service area pursuant to [her] authority under the [IRA,] Act of June 18, 1934 (48 Stat. 984)." *Id.* § 5(a). That service area includes Jackson County, Oregon, where the Medford Parcel is located. All lands taken into trust by the Secretary pursuant to Section 5 immediately become part of Coquille's reservation. *See id.* § 5(b).

In 1988, Congress enacted IGRA, which authorizes gaming operations by Indian tribes on "Indian lands," including reservation land and land that the United States holds in trust for an Indian tribe. 25 U.S.C. §§ 2703(4), 2710(b)(1). IGRA generally prohibits gaming "on lands acquired by the Secretary in trust for the benefit of an Indian tribe after October 17, 1988," the date of IGRA's enactment, *id.* § 2719(a), but it provides an exception from that prohibition "when … lands are taken into trust as part of … the restoration of lands for an Indian tribe that is restored to Federal recognition," *id* § 2719(b)(1)(B)(iii). This plainly applicable exception is what would

enable Coquille to commence gaming operations on the Medford Parcel should the Secretary of the Interior grant Coquille's application.

## II.    Medford Parcel Fee-to-Trust Proceedings

On November 2, 2012, Coquille submitted to Interior an application to take the Medford Parcel into trust. *See* U.S. Dep't of the Interior, Final Decision Coquille Disapproval at 1 & n.1 (May 27, 2020), https://www.bia.gov/sites/default/files/dup/assets/as-ia/oig/gaming_decisions/ Final%20Decision%20Coquille%20Dissaproval%2005-27-2020.pdf. On January 15, 2015, Interior announced its intent to prepare a Draft Environmental Impact Statement ("DEIS") in connection with the parcel, as required by the National Environmental Policy Act ("NEPA"), *See* Intent to Prepare an Environmental Impact Statement for the Proposed Coquille Indian Tribe Fee-to-Trust and Casino Project, 80 Fed. Reg. 2120, 2120 (Jan. 15, 2015). On May 27, 2020, Interior denied Coquille's application. *See* Notice of Cancellation of Environmental Impact Statement for Proposed Coquille Indian Tribe Fee-To-Trust and Gaming Facility Project, 85 Fed. Reg. 55,026, 55,026 (Sept. 3, 2020). But on December 22, 2021, the denial was withdrawn, and Coquille's application was remanded to the Bureau of Indian Affairs ("BIA") to complete the NEPA review process.

Pursuant to that remand, on December 27, 2021, Interior issued a notice that it was resuming preparation of a DEIS in connection with Coquille's application. *See* Resumption of Preparation of an Environmental Impact Statement for the Proposed Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, 86 Fed. Reg. 73,313, 73,313 (Dec. 27, 2021). This notice started the two-year clock, now codified by statute, by which Interior must publish the Final Environmental Impact Statement ("FEIS"). *See* 42 U.S.C. § 4336a(g)(1)(A). That two-year period thus expired on December 27, 2023. In the interim, on November 25, 2022, Interior published in

the *Federal Register* a notice announcing that the DEIS was available and setting a 45-day comment period.  Draft Environmental Impact Statement for the Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, 87 Fed. Reg. 72,505, 72,505 (Nov. 25, 2022).  Public hearings were held on December 15, 2022, and January 31, 2023; the comment period was then extended through February 23, 2023.  *See* Bureau of Indian Affs., U.S. Dep't of the Interior, *Notice of Comment Extension and Second Hearing for Draft Environmental Impact Statement*, https://coquille-eis.com/wp-content/uploads/2022/12/Notice-of-Extension.pdf.

Interior issued the FEIS on November 22, 2024.  *See* Final Environmental Impact Statement for the Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project, 89 Fed. Reg. 92,712, 92,712 (Nov. 22, 2024).  No Record of Decision ("ROD") has been issued.  The Notice of Availability accompanying the FEIS provides that the ROD will issue "on or after 30 days from [November 22, 2024]" and provides that comments could be submitted until December 23, 2024.  *Id.*  The FEIS notes that "[t]he BIA has consulted extensively with the Coquille Indian Tribe . . . and the Cow Creek Band of Umpqua Tribe of Indians" and that "consultation letters were sent to" the other Plaintiffs but "[t]o date no response has been received by the BIA."  Bureau of Indian Affs., U.S. Dep't of the Interior, *Final Environmental Impact Statement: Coquille Indian Tribe Fee-to-Trust and Gaming Facility Project*, at 3-44 (Nov. 2024), https://coquille-eis.com/wp-content/uploads/2024/11/3_Coquille-FTT-and-Gaming-Facility-Final-EIS-Vol-II-Nov-2024-508C.pdf.

### III.    This Action

Instead of availing itself of this additional opportunity to respond to the BIA, Plaintiffs on December 23, 2024, filed the complaint in this action and a motion for a temporary restraining order ("TRO") or preliminary injunction ("PI").  Apart from being rife with inaccuracies and

outright misrepresentations, that complaint highlights its prematurity by challenging only the FEIS and by noting that Record of Decision has yet to be issued.  Compl. ¶ 81-82.  The complaint also extensively details Plaintiffs' attempts to improperly influence the Secretary of the Interior's ultimate decision on Coquille's application that, if successful, would have rendered a Secretary's denial of the application actionable under the Administrative Procedure Act, 5 U.S.C. § 706(a)(2). *Compare* Compl. ¶¶ 49, 51, 52, 55, 59, *with Atx, Inc. v. U.S. Dep't of Transp.*, 41 F.3d 1522, 1527 (D.C. Cir. 1994) ("An administrative adjudication is invalid if based in whole or in part on [congressional] pressures....  The test is whether extraneous factors intruded into the *calculus of consideration* of the individual decisionmaker." (alteration in original) (internal quotation marks omitted)).[1]

To present arguments unique to Coquille's interests and to safeguard its legally protectable interest as a restored tribe and its right to acquire land in trust for economic-development purposes as envisioned by Congress in the CRA, Coquille hereby moves to intervene.

## LEGAL STANDARD

Where a proposed intervenor has standing, Federal Rule of Civil Procedure 24(a) entitles a party to intervene as of right if it (1) timely moves to intervene, (2) has a significant protectable interest related to the subject of the action, (3) may have an interest impaired by the disposition of the action, and (4) will not be adequately represented by existing parties.  *See Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 320 (D.C. Cir. 2015).

Federal Rule of Civil Procedure 24(b) instructs that courts should grant permissive intervention if (1) the proposed intervenor's motion is timely and (2) the proposed intervenor's.

---

[1] Coquille is prepared, if necessary, to prove that Cow Creek engaged in significant, untoward, additional conduct in an attempt to improperly influence numerous federal officials to sway the Secretary's decision in this case.

## ARGUMENT

This Court should grant Coquille intervention as of right or permissive intervention under Rule 24 for similar reasons.

## I.     The Coquille Indian Tribe Has a Right to Intervene.

"The right of intervention conferred by Rule 24 implements the basic jurisprudential assumption that the interest of justice is best served when all parties with a real stake in a controversy are afforded an opportunity to be heard." *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972).  Accordingly, the D.C. Circuit has held that "[a] district court *must* grant" intervention as of right,  *Roane v. Leonhart*, 741 F.3d 147, 151 (D.C. Cir. 2014) (emphasis added), when an applicant establishes "four factors: (1) the timeliness of the motion; (2) whether the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) whether the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest; and (4) whether the applicant's interest is adequately represented by existing parties." *Fund for Animals, Inc. v. Norton,* 322 F.3d 728, 731 (D.C. Cir. 2003) (internal quotation marks omitted); *see also Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1017 (D.C. Cir. 2003) (listing the four elements of Rule 24(a) as "timeliness, interest, impairment of interest, and adequacy of representation").  Coquille readily satisfies each factor.

## A.  Coquille's Intervention Is Timely.

Coquille's intervention is timely.  The timeliness requirement is "aimed primarily at preventing potential intervenors from unduly disrupting litigation." *Roane*, 741 F.3d at 151.  And, as the D.C. Circuit has emphasized, "'[t]he most important circumstance relating to timeliness' is whether a party 'sought to intervene as soon as it became clear' that its 'interests would no longer

be protected by the parties in the case.'" *Campaign Legal Ctr. v. Fed. Election Comm'n*, 68 F.4th 607, 610 (D.C. Cir. 2023) (quoting *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 280–81 (2022)).  That is plainly true here.

The complaint in this action and the TRO/PI motion were both filed on December 23, 2024, Compl.; Mot. for TRO/PI, ECF No. 2, and were accepted for filing on December 26, 2024, Civil Cover Sheet, ECF No. 3; Request for Summons to Issue, ECF No. 4.  Coquille is filing this motion only three business days later, on December 31, 2024—the same date that this Court has ordered the Federal Defendants to file their opposition to the motion for a TRO/PI.  *See Fund for Animals*, 322 F.3d at 735 (intervention timely where movant filed motion "less than two months after the plaintiffs filed their complaint and before the defendants filed an answer").  This Court has not progressed past the initial pleadings stage; the TRO/PI motion has not been fully briefed and remains pending, and this Court has scheduled oral argument for Friday afternoon, January 3, 2025.  *See, e.g.*, *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (intervention timely where movant filed motion "a few weeks after [the plaintiff] initiated its action, and before the district court ruled on the preliminary injunction").  Moreover, there is no question that Coquille's motion—to which Coquille has appended its proposed opposition to the TRO/PI motion—will not impact the briefing schedule.  *See, e.g.*, *Cayuga Nation v. Zinke*, 324 F.R.D. 277, 282 (D.D.C. 2018) (motion timely where intervention would not delay briefing on motion for preliminary injunction); *see also Sault Ste. Marie Tribe of Chippewa Indians v. Bernhardt*, 331 F.R.D. 5, 12 (D.D.C. 2019).

### B.  Coquille Has Significant Protectable Interests.

Coquille has profound interests at stake in this litigation and the pending TRO/PI motion. A challenge aimed at "overturning a favorable administrative action" by Interior "sought by [a

tribe] and which benefit[s] [the tribe]" regarding its efforts to restore its tribal land base and develop a gaming facility suffices as a matter of blackletter law. *Forest Cnty. Potawatomi Cmty. v. United States*, 317 F.R.D. 6, 12 (D.D.C. 2016). This is because, as the D.C. Circuit has emphasized, "there can be no question" that this factor is established where "the relevant 'transaction' is [an agency's] decision to permit" certain conduct by the regulated movant. *Fund For Animals*, 322 F.3d at 735. Here, that standard is clearly satisfied.

Plaintiffs' action challenges the validity of the FEIS which, depending on how it is implemented by the Secretary of the Interior in a ROD, could be part of the final decision whether there will be a transfer of the Coquille-owned Medford Parcel into trust for Coquille's benefit and whether Coquille can commence gaming operations on that Parcel. A more direct interest can hardly be imagined. *See, e.g.*, *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 317 (holding that "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit," there is "a sufficient injury in fact" to establish significant protectable interests) (collecting cases); *see also, e.g.*, *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding that movants had standing where they "benefit[ed] from the [agency's]" action and "would suffer concrete injury if the court grant[ed] the relief the petitioners [sought]").

### C. Coquille's Interests May Be Impaired by the Outcome of this Action.

"[T]he practical consequence … of being denied intervention" may materially impair Coquille's interests in four respects. *Mandan, Hidatsa & Arikara Nation v. U.S. Dep't of Interior*, 66 F.4th 282, 286 (D.C. Cir. 2023).

First, without intervention, Coquille would not be able to prevent an agreement between the parties to further delay the application process. As the record shows, Coquille has already

waited 12 years for a decision regarding its land-into-trust application.  This is already an unreasonable delay.  *See, e.g.*, *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) ("[A] reasonable time for agency action is typically counted in weeks or months, not years."); *see Pub. Citizen Health Rsch. Grp. v. Auchter*, 702 F.2d 1150, 1157–59 (D.C. Cir. 1983) (per curiam) (three-year delay unreasonable).  Additional delay by an agreed resolution would further injure Coquille's interests, both economic (discussed below) and sovereign.  *See Mandan, Hidatsa & Arikara Nation*, 66 F.4th at 286 (factor satisfied where proposed intervenor "cannot stop a settlement").

Second, Coquille has already suffered significant economic losses due to the delay that would continue to accumulate with any further holdup occasioned by this litigation, whether by settlement or by Court-ordered relief.  And there is no means for Coquille to recoup these substantial economic loses.  *See Fund for Animals*, 322 F.3d at 735 (factor satisfied where movant's "loss of revenues during any interim period would be substantial and likely irreparable"); *see also Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (factor satisfied where district-court judgment would cause financial losses that the movant "cannot recoup").

Third, without intervention, Coquille could be hampered in defending a potentially favorable decision regarding its application.  In this respect, this case is similar to *Forest County Potawatomi Community*, where this Court concluded that that "the challenged decision was favorable to the [movant tribe], and the present action is a direct attack on that decision," such that "the requested relief, if granted, would, as a practical matter, impede the [tribe's] efforts to ... develop a gaming facility."  317 F.R.D. at 14.  Again, while there is no final decision to date, the crux of Plaintiffs' complaint seeks to prevent any decision favorable to Coquille from being

rendered or effectuated.  That request for relief plainly seeks to "impede the [tribe's] efforts" regarding its gaming facility.  *Id.*

Fourth, without intervention, Coquille would not be able to appeal a decision acceptable to Defendants with which Coquille is dissatisfied.  That alone is sufficient.  *Mandan, Hidatsa & Arikara Nation*, 66 F.4th at 286 (factor satisfied because movants could not, "if dissatisfied with the decree entered after contest, press their contentions on appeal").

### D.  Defendants Will Not Adequately Represent Coquille's Interests.

Intervention is additionally warranted because the Federal Defendants will not adequately represent Coquille's interests.  As the D.C. Circuit has emphasized, this last requirement for intervention is "not onerous," and "a movant ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321 (internal quotation marks and citations omitted).  In that vein, "even when the interest of a federal agency and potential intervenor can be expected to coincide, that does not necessarily mean … adequacy of representation is ensured for purpose of Rule 24(a)(2)." *Id.* (alteration in original) (internal quotation marks omitted).

This "minimal burden" is satisfied where, as here, a tribe seeks to intervene in land-into-trust litigation concerning proposed gaming operations because the tribe "ha[s] a narrow financial interest that the Government does not share" and that "the Government need not, and indeed cannot reasonably be expected to, represent." *Sault Ste. Marie Tribe of Chippewa Indians*, 331 F.R.D. at 13 (internal quotation marks omitted).  And Coquille's financial interests relate directly to its sovereign interest in fulfilling the needs of its people—an interest that necessarily differs from that of the Federal Defendants. *Fund for Animals*, 322 F.3d at 736 (finding the foreign sovereign's "interests plainly ... not adequately represented by the federal defendants" because although there

12

"may be some overlap" between federal and foreign interests, each sovereign's "obligation is to represent the interests of [its own people]"); *accord Maverick Gaming LLC v. United States*, No. 23-35136, --- F.4th ----, 2024 WL 5100829, at *12 (9th Cir. Dec. 13, 2024) ("[E]ven though IGRA was created to promote tribal interests and codifies the federal government's trust obligation to the tribes, the federal government's interest will not always align with the interests of the tribes.  That is because ... the federal government's overriding interest ... must be in complying with [federal] laws, which differs in a meaningful sense from [the Tribe's] sovereign interest in ensuring that [gaming] ...  provide[s] profits to the [Tribe]." (internal quotation marks omitted)).

Moreover, Coquille is subject to Interior's regulatory power.  The D.C. Circuit has emphasized that, in challenges to agency action where the movant is regulated by that agency, the movant "should not need to rely on a doubtful friend to represent its interests, when it can represent itself." *Crossroads Grassroots Pol'y Strategies*, 788 F.3d at 321; *see Maverick Gaming LLC*, 2024 WL 5100829, at *10 (emphasizing that the "Secretary of the Interior does not consider the tribes' interests exclusively when tasked with approving" gaming compacts).  That is especially true in a case like this one, where Interior has been extraordinarily slow in considering the Tribe's application and has apparently reversed course more than once.  *See, e.g.*, *Connecticut v. U.S. Dep't of Interior*, 344 F. Supp. 3d 279, 292–93 (D.D.C. 2018) (recounting how Interior "repeatedly informed" tribes that it supported gaming compact amendments before changing its position).

*Forest County Potawatomi Community* is particularly instructive.  There, a tribe sought to intervene in a suit brought by another tribe against Interior challenging an adjudication by Interior that benefitted the movant tribe.  317 F.R.D. at 8–9.  The district court reasoned that the federal defendants would not adequately represent the movant-tribe's interests precisely because the tribe was "concerned with preserving [its] own rights and opportunities, including [its] specific

economic development goals, both under the IGRA and in their capacities as sovereign entities," whereas "[t]he federal government ... represent[ed] the public interests of its citizens as a whole, and would be shirking its duty were it to advance [a] narrower interest at the expense of its representation of the general public interest." *Id.* at 15 (quoting *Fund for Animals*, 322 F.3d at 737). The same logic applies here.

What's more, that Defendants' interests depart from Coquille's here is plain from the record. Defendants have already sought fit to delay a decision for 12 years despite the highly prejudicial impact this unreasonable delay has wrought on Coquille. Coquille's members have many unmet needs due to lack of financial resources. *See Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 193–94 (D.C. Cir. 2016). Coquille's unique interests—divorced from the actions and motivations of Defendants—in an expeditious decision are thus readily apparent, as each day of delay is a day when the Tribe's financial needs continue to go unmet.

Because Coquille satisfies all the factors for intervention as of right, the Court should grant its motion.

## II.    In the Alternative, the Court Should Permit the Tribe to Intervene.

In the alternative, and for similar reasons, this Court should permit the Tribe to intervene in the exercise of its discretion under Rule 24(b). Courts considering permissive intervention sought by Indian tribes begin from the premise "that Indian tribes' 'participation in litigation critical to their welfare should not be discouraged.'" *Sault Ste. Marie Tribe of Chippewa Indians*, 331 F.R.D. at 14 (quoting *Arizona v. California*, 460 U.S. 605, 615 (1983)). And permissive intervention is proper where the motion is timely and the moving party's claim or defense and the main action have a question of law or fact in common. *See id* at 9. Both requirements are satisfied here.

First, as discussed above, Coquille is filing this motion only three business days after this action commenced.  Other than the complaint and initial motion for a TRO/PI, no briefing has occurred.  And indeed, this motion and accompanying opposition to the TRO/PI are being filed when Federal Defendants' opposition brief is due.  The motion is therefore timely.

Second, Coquille's claims and defenses and the main action have numerous questions of law and fact in common.  To begin, Coquille has arguments addressing the improper and meritless TRO/PI.  In addition, when final agency action occurs (via Interior's issuance of the outstanding ROD), Coquille's arguments regarding the validity of that decision will likely implicate, at least in part, questions of both law and fact that Plaintiffs have raised in their complaint, including questions about the FEIS.

Where a tribe moves to intervene because it "seek[s] to defend the Department's decision" (once it issues), the tribe's sharing defenses "in common with the Department is sufficient" to warrant permissive intervention.  *Sault Ste. Marie Tribe of Chippewa Indians*, 331 F.R.D. at 14. For instance, in *Michigan Gambling Opposition v. Norton*, this Court held that permissive intervention was appropriate because the movant tribe had "a sufficient interest in defending [federal] defendants' decision to place [a] parcel of land into trust" for purposes of opening a gaming facility.  Civ. A. No. 05-01181, 2005 WL 8169574, at *3 (D.D.C. Sept. 1, 2005).

For these reasons, this Court should at least grant Coquille permissive intervention.[2]

## CONCLUSION

Coquille's motion to intervene should be granted.

---

[2] If the exigency of the TRO/PI proceedings makes it impossible for the Court to rule on this intervention motion before the January 3, 2024 hearing on Plaintiffs' TRO/PI motion, the proposed intervenor Coquille Indian Tribe respectfully asks the Court to treat its current filings as having been filed by an *amicus curiae*, without prejudice to the Tribe's renewing its request for intervention at an appropriate time.

Dated: December 31, 2024

Respectfully submitted,

/s/ Keith M. Harper
Keith M. Harper, D.C. Bar No. 451956

Scott Crowell*
Crowell Law Offices–
   Tribal Advocacy Group
1487 W. State Route 89A, Suite 8
Sedona, AZ 87337
(425) 802-5369
scottcrowell@clotag.net

Sam Hirsch
Elizabeth B. Deutsch
Jenner & Block LLP
1099 New York Ave, N.W. Suite 900
Washington, D.C. 20001
(202) 639-6000
kharper@jenner.com
shirsch@jenner.com
edeutsch@jenner.com

*Counsel for the Coquille Indian Tribe*

*\*Pro Hac Vice Motion Forthcoming*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 31, 2024, I caused the foregoing document to be electronically filed with the Clerk of the Court for the District Court for the District of Columbia by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


<u>/s/ Keith M. Harper</u>
Keith M. Harper